Case No. 15-1323 El Paso Natural Gas Company, LLC Petitioner v. Federal Energy Regulatory Commission Mr. Nelson for the petitioner, Mr. Brunson for the respondent May it please the Court, my name is Howard Nelson and I represent the petitioner in this I would first like to address the issues on the merits and then turn to the Commission's argument on standing unless the Court would like to hear argument on standing first. I'd like to hear the argument on standing first because if you don't have standing I don't have to listen to the argument on the merits. Very well. Your Honor, the Commission's position in this case is that because the orders under review did not change the rates in the underlying proceeding and merely set precedent to be applied in a subsequent case that there is no cognizable injury in standing. But this Court has made clear that petitioners will have standing if the orders under review cause them imminent harm and immediate prospect of future injury or a looming unavoidable threat of harm. And in this case the harm was imminent, the prospect of future injury was immediate, and the threat of harm was looming and unavoidable. Prior to the issuance of the orders under review, El Paso had in fact filed its subsequent rate case referred to as the 2011 case. By the time the Commission issued the first order under review... And in the second rate case, that's now pending on some rehearing requests? That's correct, Your Honor. Okay. And then the Commission has decided several, for example, in Southern they already decided a rehearing request. In Southern? Yeah. Southern Natural Gas. Which, the Southern Natural Gas, you mean the Alabama Municipal Gas case? No, Southern, or Southwest, I'm sorry. Oh, Southwest. Yeah. The Southwest case actually was, the appeal in Southwest, that was actually dismissed. There were two appeals filed from that case. Right. One was dismissed and one was held in abeyance. Right. But that's part of this second rate procedure, isn't it? But it has nothing to do with the capital structure issue. Well, I know that. So Southwest files a petition for judicial review and we hold it in abeyance pending the Commission's disposition of all the other rehearing requests. That's correct. Right. And they're monthly or whatever reports being filed with our court. That's correct. So my question to you, then, is why shouldn't we follow the same procedure with respect to your case and not get into whether it's right now or whether you're into it, and just hold it in abeyance pending the Commission's disposition of all the rehearing and then consolidate it with the petition for judicial review from the Commission? Well, if we're talking about right, Your Honor, the law is clear that if the Commission's position is crystallized, which it is in this case, and there's no need for further factual development, there's no reason to await a subsequent case, as Your Honor suggested. Here, the Commission doesn't claim that there's anything further to do in the second case. In fact, the Commission has already applied the ruling from the orders under review to the balances in question, to the two non-rate-based assets in question. But in your rehearing request, you raised the same issues that you're raising here. Well, all we did is preserve our rights. But the only thing the Commission did in the second case was to apply its rulings in the cases under review to those balances. You know, the Mountain States case and the, I guess, Southwest Power Point case, they suggest that unless there's a reason to postpone review, when the rulings under review have crystallized, are concrete, and are final, there's nothing to be gained. The comprehensive record exists in this case. There is really no record to speak of in the second case because all they did was apply their rulings to the balances. You mentioned that the Commission is not deciding the rehearing request in a second-rate case because it's waiting to see what this Court decides in this case. I have no idea what's behind the timing of the Commission's decisions. Because they've been pending for more than a year. Yes, I believe that's the Commission's decision, or Opinion 528, I believe, was in 2016. But, you know, its orders in this case took two and a half years from the initial decision to the time of its order on rehearing. So I don't know if I would expect it any time soon. Turning to the merits of the issue, the facts of this case are fairly straightforward. El Paso's total capitalization exceeds the amount of assets in its regulated rate base. It is not disputed, however, that El Paso does not earn a regulated return on the non-rate base assets that are associated with that excess capitalization. So the issue is not whether El Paso should be permitted to earn a regulated return on assets that are not devoted to jurisdictional service. They're not. The issue is whether inclusion of some of the excess capitalization to calculate a capital structure, distort that capital structure for purposes of setting a return on rate base. In the orders under review, the Commission required El Paso to remove two non-rate base assets solely from the equity component of capital structure. $565 million in a loan or in a balance that had accrued under a FERC-approved... And then another $145 million in undistributed earnings of one of its subsidiaries. There are two lines of cases that support the proposition that what the Commission did is contrary to both court and FERC precedent. The first line of cases, which has its genesis in a 1971 Fifth Circuit opinion, holds that removal of non-rate base assets from the equity component of capitalization is only appropriate if the financing source of those assets could be distinctly identified and surely isolated to equity. And in the words of subsequent Commission cases, trace to equity. Now this requirement comports with common sense. If the source of a non-rate base asset cannot be traced to equity, as is the case here, where the source of both the loan balance and the subsidiary earnings was revenues derived from operations, then there's no reason to assume that the use of the company's total capitalization will distort capital structure. It's only if the non-rate base asset was sourced in a different debt equity proportion that rate base is the capital structure distorted. So what is FERC's response to these cases? We suggest they're internally inconsistent and are arbitrary and capricious. Importantly, FERC concedes that to remove a non-rate base asset from equity, it must be attributed to equity. In fact, in the rehearing order in this case, the Commission found that $50 million of the loan balance was traceable to a debt issuance and it allowed that $50 million to be reduced, removed from debt, not equity. So putting aside the Commission's unexplained distinction that it attempts to draw between the requirement to attribute an asset to equity but not necessarily trace the asset to equity, FERC has done neither. It is not disputed that the loan balance and the subsidiary earnings were generated from revenues derived from operations. Thus, by definition, those funds have been commingled into El Paso's financial affairs and cannot be traced to either debt or equity. In fact, the Commission has refused to remove a loan specifically from equity because it had not been traced to equity, and that's the Mountain Fuel case. So in sum, the first position seems to be if you can trace an asset to equity, it can be removed from equity. If you can trace it to debt, it can be removed from debt. But if you can't trace it to either equity or debt, we still remove it from equity. We think that's arbitrary and capricious. FERC also acknowledges that it is only if the excess capitalization changes the debt-equity mix of the company's investment and rate base is the company's capital structure distorted in a way that requires an adjustment. But FERC has not shown in this record that either the existence of a loan balance or the undistributed subsidiary earnings changes that mix. They make a number of assertions that are basically unexplained. They argue that the loan balance offsets the parent's stake in the business and changes the company's financial realities. But those assertions do not show a change in the mix of investment and rate base. Again, that can only be shown if the non-rate-based assets were funded in a different proportion, a different debt-equity proportion, than the financing underlying rate base. The FERC also makes a number of arguments along the lines of, well, if we don't remove these assets from equity, El Paso's equity ratio will be higher, and that raises the rates to rate payers. But again, that's not an explanation of a change in the mix of debt equity, and there's no indication that the use of total capitalization in this case results in rates that do not reflect the cost of capital. The second line of cases, which are very key here, is the Opinion 414 series in the Transco proceedings, where the Commission held that there are valid business reasons for either a pipeline or a parent to establish a specific equity ratio and capital structure. The Commission found that there are close financial, managerial, and operational ties between a subsidiary and its parent. And therefore, the Commission found changes policy and said, we're no longer going to look at the motivation behind the setting of a certain capital structure, even if the parent intentionally increased the equity ratio to raise the rates of the regulated company, as long as the pipeline does its own financing and the resulting equity ratio is reasonable in the sense that it's within an acceptable range of equity ratios approved by the Commission in the past and of the proxy group. Before you sit down on your opening, can I just return to the threshold question? Because on a slightly different tack than Judge Randolph, it just seems that our precedent in Wisconsin, the Wisconsin case, suggests that if this doesn't have an effect on the 2008 rate case, then there's no standing here. So how would you distinguish the Wisconsin case? In a few ways, Your Honor. In that case, there were really three parties. There was an independent system operator that the Commission allowed to pass through administrative costs to a transmission owner. And the transmission owner, in a subsequent proceeding, would attempt to pass through that cost to its customers. So it was the third party, the customers or the transmission owner, that claimed that sought review. And we don't have that in our situation. That's true, but the language in Wisconsin, at least, does suggest, you know, the fact that a petitioner may be aggrieved by other related orders does not cure a failure to show an injury in fact caused by the order actually under review. But the injury, in fact, can be imminent, and it could be a future injury, as long as it's imminent, it's unavoidable, and it's looming. And I would point you, Your Honor, to the A&R case, where in that case the Commission increased a rate, it decreased the rate to A&R, and it decreased, well, actually it changed the allocation of costs so that the rate would be higher for one party and lower for other parties. But the pipeline in that case could not increase the rates due to the file rate doctrine, so it would have to file another rate case to do that. And the same argument was made in that case. Well, the petitioner A&R was not harmed until that second case, but the court found it was unavoidable that Great Lakes, the pipeline in that case, was going to file that case. There's an opinion by then-Judge Scalia in this circuit, the FCC case. It's radiant. It talks, but it wasn't joined by the other two judges, but it's had an effect afterwards on other cases in this circuit. And he makes the following point that I'd like you to respond to. What you are complaining about is essentially the collateral estoppel effect within the agency having reached a decision in this case that's going to feel bound in the second rate case to follow that decision and won't reconsider it. That's your point, right? But Justice Scalia said that that does not confer standing or rightness because there's no collateral estoppel effect on the court. So the court in the second rate case, if you petition for judicial review, it's pending, I realize now in the hearing, that there is nothing to prevent this court from dealing with your merits arguments that you're making now. Yes. Your Honor, there are a number of cases that say the collateral estoppel effect alone, just like the mere precedential effect alone, is not sufficient. But we don't have just that here. We have harm. Not only do we have imminent harm, we have harm that has already occurred prior to the orders becoming final in this case because the commission applied the rulings on capital structure in the orders under review. They've already applied them to El Paso in the subsequent rate case. And so it's not a question of just mere precedent alone and then we don't know what's going to happen later. Bring a petition for review in the second rate case where you're harmed. You're not harmed. It had no effect, the ruling had no effect on your rate from the first rate case. Only because of its precedential collateral estoppel effect did it have an impact in the second rate. But, Your Honor, that rule, that's the ruling that would read away all the cases that say you don't have to suffer a harm, immediate harm from that case. If it's an imminent harm, if it's a looming unavoidable harm, a threat of harm, it doesn't have to be harm. It has to be a looming unavoidable threat of harm. Under those cases, we have standing. And under the ripeness doctrine, this proceeding is the appropriate proceeding. It's the more fit proceeding for review because there's nothing further to be done. There is no reason to delay the case. I see you. Thank you. We'll give you some time in rebuttal. Thank you. Good morning. Good morning. Anand Viswanathan for the Commission. Just very briefly on jurisdiction, I'll just add to what's already been said. As Your Honors are aware, the subsequent rate proceeding is still for the agency. A petition for review that has been filed has been held in abeyance. That's the Southern California? I think it's the Southwest Gas. Oh, no, you're absolutely right. The Southwest Gas was dismissed. That's correct, Your Honor. It is the Southern California petition. So that's the one that's been held in abeyance. El Paso, I think, has indicated that they may have an interest in filing a petition for review upon the conclusion of that proceeding. Let me ask you something. Suppose the rehearing order comes down tomorrow by FERC. The parties to the proceeding are pretty dispersed. There's no requirement that a petition for judicial review from that second rate case be filed in this circuit, is there? No, I don't believe the petition would have to be filed in this circuit. It could be wherever the principal place of business is, of El Paso, for example, or where it's incorporated. I think that's absolutely right, Your Honor. Now, does that venue requirement continue to apply in the face of we already have one petition for review? We're holding an abeyance from that very proceeding. Does that mean that all petitions for review thereafter have to come to this circuit as opposed to scattered throughout the country? Well, I don't believe that further petitions would have to come to this circuit. But I think that I believe you were pointing out the cases with respect to harm predicated on collateral estoppel. And so to the extent that this court were to dismiss the case on jurisdictional grounds, I think that's from Alabama Municipal as well as ExxonMobil, that dismissal on jurisdictional grounds would not collaterally estop petitioners like El Paso from petitioning for review in a future rate proceeding and challenging both that order on review as well as these orders that are now before this court. Aside from questions of precedent, what is the rationale for saying if a ruling has collateral estoppel effect within an agency, that that does not amount to harm? I mean, I can understand the argument, and Petitioner's counsel, I think, makes this very forcefully, that I can understand the argument that, well, it's in the future. You don't know when it's going to happen. That's all hypothetical, but we don't have that here. And we know it's having an effect because it was applied in the second rate case. So what's the rationale? Forget about precedent for the moment. I think the rationale is that if it's been applied in a subsequent rate proceeding, we wait until that rate proceeding is actually resolved because any number of things can happen in that proceeding. The parties could end up agreeing to a settlement that resolves the dispute entirely. And so that saves the court. Dismissing now rather than hearing a petition now saves the court the time and resources of weighing in on a controversy that has not yet materialized and may never materialize. And I think that the Wisconsin Power case that Judge Kavanaugh pointed to, in that proceeding, the subsequent proceeding, FERC had approved the pass-through charge while the case, the underlying case was on review before this Court. And the Court still found that even if there's agreement to Petitioner's from that future order, that still doesn't create agreement in the orders that are now actually under review. So the possibility is settled. There is the possibility. Exactly. And the possibility the agency may change its mind over the hearing. That's exactly right. And I think that, as you mentioned, there's any number of ways this can go. And so I think this Court's precedent has been pretty consistent that we wait until those proceedings are fully resolved. And then to the extent that the parties, like El Paso, choose to file a petition for review, they can do so. And the Court would still have the ability to review both those later orders as well as any earlier related orders. There are two ways we can wait. One way is to write an opinion of the sort that you're requesting and then dismiss this case. The other is just to hold this case in place pending the completion of the agency's proceeding. I think that's right, Judge Randolph. I think the only issue is that I'm not sure there would be any benefit to this Court or to the parties for holding this petition in abeyance, because if the results do turn out that, let's say, the parties settle the subsequent case, this petition would, that's being in this hypothetical being held in abeyance, would have to be dismissed anyway. And so there would be no harm in dismissing because the parties would still have the opportunity, if they choose to, after the conclusion of that proceeding, to file another petition. Let me suggest to you one benefit. The benefit of holding it in abeyance is that the case has been fully briefed and it wouldn't have to be redone. Well, I think that that's a fair point, Judge Randolph. Although, upon conclusion of the subsequent proceedings, assuming there's another petition, I think the parties would probably continue to brief this issue. I'm not sure they would refer back to the briefing on the petition being held in abeyance. So I'm just not sure I see any practical benefit to the parties or to the Court in holding the petition in abeyance as opposed to just dismissing it. If there are no further questions on jurisdiction, I can just briefly turn to the merits. I think there was some discussion earlier about this sort of distinction between attributing an asset to equity versus tracing it to equity, and I just want to make sure we're being precise about how we're using the language here and specifically the questions that the Commission has attempted to answer when using those terms. The first question is, from the Commission's perspective, is whether assets should be included in the pool of funds for which a pipeline may earn a regulated return on equity. And so that's what it means by, is an asset attributable to equity, in that is it attributable to the equity component of a pipeline's capital structure? That's a different question from whether a specific type of asset can be traced back to an issuance of stock, otherwise known as equity. And as far as the tracing issue, the Commission's only applied that with respect to a very specific type of asset that's not at issue here, and that's investments in pipeline subsidiaries. But the rule that the Commission follows and has followed for some time, as your owners are aware, is that assets that are not devoted to jurisdictional use need to be removed from a pipeline's capital structure. And in this case, as my friend from the other side noted, these assets at issue came from operations. And so as the Commission explained in its orders, revenue that comes from operations is, generally speaking, available for the pipeline to dispose of at its discretion. When those funds are not made available for jurisdictional operations or for the benefit of ratepayers, the Commission, as a policy matter, chooses to exclude those funds from the equity side of capital structure. That is, it's ensuring that ratepayers are not paying a return on equity that includes funds not devoted to jurisdictional use. Happy to answer any other questions. If not, I will cede the rest of my time. Okay, thank you. Thank you. Thank you, Ryan. I would like to point out a couple things about the Wisconsin case that's been discussed here. I think the main difference between that case and this case is that it was uncertain what would happen in the subsequent case in Wisconsin, but it's very certain what would happen here because it already happened. In the Wisconsin case, the transmission owner actually requested in the first case that the Commission approve pass-through. And the Commission said, the Commission instead reserved the issue for future proceedings explaining that it lacked a concrete proposal for a pass-through and the issue is therefore not right for consideration. And in the subsequent case, pass-through was only permitted once the transmission owner affirmatively demonstrated that the charges were otherwise not being recovered. So there were things left to be done, and therefore the harm to the customers, the transmission owners, was not known or it was uncertain. In this case, it was very certain. And in response to Judge Randolph's question about why couldn't the Commission change their mind, well, there's no indication anywhere that this is not a concrete and final ruling. I mean, anything can happen, but there's no indication that the Commission is going to change its mind. Is your client in any kind of settlement discussions? No, Your Honor. I mean, the cases have been decided at the Commission level, and it's just before they're on rehearing. So I just, you know, the Rightness Doctrine, you know, goes to the issue of which proceeding is the most fit proceeding for judicial review to occur, and this one is that. I just want to also mention the Commission's rationale here. Their primary rationale is that these assets were not available for investment and rate base. And it's our position that that rationale both proves too much and is really not the right question. Whether an asset is available for and used to provide jurisdictional service, that determines whether it's in rate base and as such qualifies for a return. Whether it's available for investment in rate base has nothing to do with capital structure, which goes to the debt equity mix, the financing of rate base. And so the rationale, I think, is arbitrary and capricious. Thank you. Thank you. This is submitted.
judges: Kavanaugh, Sentelle, Randolph